UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

ANA MARIA MORALES LOPEZ,                    )
                                            )
                        Petitioner,         )
                                            )
            v.                              )        No. 4:26-cv-00113-SEB-KMB
                                            )
SCOTT A. MAPLES, JR. in his official capacity )
as Sheriff of the Clark County Jail, *et al.*,  )
                                            )
                        Respondents.        )

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Noncitizen Ana Maria Morales Lopez seeks a writ of habeas corpus. She challenges the lawfulness of her continued detention at the Clark County Jail on behalf of U.S. Immigration and Customs Enforcement (ICE). The Court **grants** Ms. Morales Lopez's petition and orders the respondents to **immediately release** her from detention.

**I. Facts**

Ms. Morales Lopez entered the United States without inspection from her native Mexico in approximately 2021. Dkt. 1 ¶¶ 60–61. Between then and April of this year, she had no interaction with U.S. immigration officials.

Ms. Morales Lopez was arrested in Hancock County on April 7, 2026. Dkt. 6-1 at 7. Immigration Officer Raven issued an administrative warrant "command[ing]" that Ms. Morales Lopez be arrested under 8 U.S.C. § 1226. *Id.* at 5.

ICE took custody of Ms. Morales Lopez on April 7. *Id.* at 7. She has been detained since then and currently is detained at the Clark County Jail. There is no indication that she has received a bond hearing.

Ms. Morales Lopez was in her third month of pregnancy at the time of her arrest. *Id.* at 8; dkt. 1-1. The record does not document that, before or since her arrest, an authorized ICE official has determined that exceptional circumstances require her detention despite her pregnancy.

## II. Analysis

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Ms. Morales Lopez argues that her continued detention violates the Immigration and Nationality Act (INA), an ICE policy regulating the detention of pregnant women, the *Accardi* doctrine, and the Fifth Amendment's Due Process clause. The respondents answer that the INA not only authorizes but requires the government to detain Ms. Morales Lopez through the conclusion of her removal proceedings. However, they do not address ICE's restrictions on detaining pregnant women.

Under the INA, Ms. Morales Lopez is eligible for discretionary release on bond. Because her release is not prohibited by law, her release is therefore mandatory under ICE's policy for detaining pregnant and the *Accardi* doctrine.

### A.    8 U.S.C. §§ 1226 and 1225

At issue here are 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).

Section 1226(a) provides:

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. [T]he Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

> (B) conditional parole[.]

An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see* also 8 C.F.R. § 1236.1(c)(8). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged

in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." Section 1225(b)(2)(A) provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

**B.    Ms. Morales Lopez's Detention Is Authorized by § 1226(a)**

The record reflects that Ms. Morales Lopez's detention is authorized by § 1226(a), making her eligible for discretionary release on bond.

The Court has previously determined that, considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" noncitizens attempting to enter the United States rather than undocumented aliens like Ms. Morales Lopez who have lived in the interior of the United States for years. *See, e.g.*, *Singh v. Bondi*, No. 1:25-cv-02101-SEB-TAB, 2025 WL 3029424, at *3–5 (S.D. Ind. Oct. 30, 2025). As the Court has previously explained, the respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice. *See Alejandro v. Olson*, No. 1:25-CV-02027-JPH-MKK, 2025 WL 2896348, at *14–19 (S.D. Ind. Oct. 11, 2025).

In *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, a decision that carries persuasive authority due to its procedural posture,[1] the Seventh Circuit determined that "seeking admission" cannot be logically seen as synonymous with "applicant for admission" without violating several established canons of statutory interpretation. 161 F.4th 1048, 1061 (7th Cir. 2025) (*Castañon-Nava I*). This Court has applied those established canons of statutory interpretation in its previous cases and has reached the same conclusion.

The respondents concede that this Court's previous analysis "control[s] the result in this case should the Court adhere to the legal reasoning in those prior decisions." Dkt. 6 at 7. Nevertheless, they urge the Court to deviate from its previous decisions. They support that position with citations to numerous decisions upholding the government's interpretation of § 1225(b)(2)(A), including two recent circuit court decisions: *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 503 (5th Cir. 2026), and *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).

In *Buenrostro-Mendez*, the Fifth Circuit found that "seeking admission" is a permissible redundancy for "applicant for admission." 116 F.4th at 503. In *Avila*, the Eighth Circuit similarly held that the meanings of "applicant for admission" and "seeking admission" and the grammatical structure of 8 U.S.C. § 1225(b)(2)(A) show that "in the context of the statute the two phrases are synonymous." 170 F.4th at 1135.

In contrast, three circuit courts have rejected the respondents' expansive interpretation of § 1225 in recent weeks and embraced reasoning similar to the Seventh Circuit's in *Castañon-Nava*

---

[1] *See Morales Perez v. Walsh*, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026) ("[a]t a minimum, *Castañon-Nava* carries substantial persuasive weight. It is true that *Castañon-Nava* cautioned that its decision was limited to 'the current record.' [161 F.4th at 1061]. But the statutory-interpretation issue that the opinion resolved was one purely of *law*, and any adjustment to the *factual* record going forward would not likely alter the legal conclusion. In any event, as explained below, the Court agrees with *Castañon-Nava*'s holding on the legal question, so there is no need here to definitively decide whether it is binding precedent or something short of that.").

*I. See Lopez-Campos, et al. v. Raycraft, et al.*, Nos. 25-1965/1969/1978/1982, --- F.4th ---, 2026 WL 1283891 (6th Cir. May 11, 2026)[2]; *Hernandez Alvarez v. Warden*, et al., No. 25-14065, --- F.4th ---, 2026 WL 1243395 (11th Cir. May 6, 2026);[3] *Barbosa da Cunha v. Freden*, No. 25-3141-PR, 2026 WL 1146044 (2d Cir. Apr. 28, 2026).[4]

The Court is not convinced that the Seventh Circuit will depart from *Castañon-Nava I* (and disagree with the Second, Sixth, and Eleventh Circuits) to instead follow *Buenrostro-Mendez* or *Avila*. Therefore, the Court continues to rely on *Castañon-Nava I* as persuasive precedent.[5]

Furthermore, the respondents' legal reasoning cannot be reconciled with the government's treatment of Ms. Morales Lopez. Before her recent arrest, Ms. Morales Lopez lived in the United States for roughly five years. When the government arrested her, it did so subject to a warrant

---

[2] "We therefore find that an 'applicant for admission' is not necessarily 'seeking admission.' Because no Petitioner is alleged to be seeking admission or lawful entry into the United States, § 1225(b)(2)(A)'s mandatory detention scheme does not apply to them. And since '§ 1226 applies to aliens already present in the United States' and 'creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings,' Petitioners could have been detained pursuant to only § 1226." *Id.* at *11.

[3] "Simply put, the language that Congress has chosen to use does not grant to the Executive unfettered authority to detain, without the possibility of bond, every unadmitted alien present in the country. Nowhere in the text, structure, or history of the INA does that reading find steady footing. We are obliged to read the words found in the statute—'an alien who is an applicant for admission' and 'an alien seeking admission'—in line with the meaning Congress has given them. When we do so, it appears to us that Congress has instead preserved the longstanding border-interior distinction for purposes of detention, a position it has taken for over a hundred years." *Id.* at *21.

[4] "Although divided panels in two other circuits have agreed with the government, . . . we respectfully find the statutory analysis in those decisions, which largely mirrors the government's flawed arguments in this case, to be unpersuasive. . . . [B]ecause Section 1225(b)(2)(A) applies only to a noncitizen who is both an 'applicant for admission' and 'seeking admission,' it does not apply to Petitioner." *Id.* at *4, *6.

[5] After this case was fully briefed, the Seventh Circuit issued its merits ruling in *Castañon-Nava*, --- F.4th ----, 2026 WL 1223250 (7th Cir. May 5, 2026) (*Castañon-Nava II*). The ultimate issue in *Castañon-Nava* was ICE's compliance with a consent decree prohibiting it from arresting noncitizens without warrants. While one judge reaffirmed the § 1225-1226 analysis that resolved the preliminary injunction motion, one reaffirmed his dissent from that analysis, and one found the § 1225-1226 issue was not necessary to resolve the case on the merits. Accordingly, *Castañon-Nava I*'s preliminary injunction ruling remains persuasive authority as the only Seventh Circuit decision on the § 1225-1226 issue.

citing § 1226. Given the government's treatment of Ms. Morales Lopez, it cannot plausibly now maintain that she is subject to § 1225(b)(2)(A) and therefore categorically ineligible for discretionary release. *See Singh*, 2025 WL 3029524, at *6 (citing *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025); *Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023)).

In sum, the record demonstrates that Ms. Morales Lopez's detention is authorized only by § 1226(a), entitling her to consideration of bond.

**C.      The *Accardi* Doctrine**

Ms. Morales Lopez also argues that her continued detention violates the doctrine of *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). "*Accardi* and its progeny teach generally that federal agencies are required to follow their own regulations and some other formally adopted procedures, including those that govern exercises of an agency's discretion." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021).

The procedure at issue here is ICE Directive 11032.4, *Identification and Monitoring of Pregnant, Postpartum, or Nursing Individuals*. Dkt. 1-4. The directive states plainly that "ICE should not detain, arrest, or take into custody for an administrative violation of the immigration laws individuals known to be pregnant, postpartum, or nursing unless release is prohibited by law or exceptional circumstances exist." *Id.* ¶ 1. "Exceptional Circumstances exist" only where "(1) the individual poses national security concerns; or (2) the individual poses an imminent risk of death, violence, or physical harm to any individual." *Id.* ¶ 3.4. Detention of pregnant women is "necessary and appropriate" only in "very limited circumstances."

When an ICE detainee—or prospective detainee—is found to be pregnant, a Field Office Director or a "designee not below the Assistant Field Office Director (AFOD) level" must

determine that detention is appropriate. *Id.* ¶¶ 2.1, 5.1. The Field Office Director or designee must review whether continued detention of a pregnant woman is appropriate and required "[a]t least weekly." *Id.* ¶ 5.4.

Ms. Morales Lopez's *Accardi* argument is straightforward. She is a pregnant person. Her release is not prohibited by law; indeed, she is eligible for discretionary release under § 1226(a). And no authorized official has ever found that her detention is necessary because she poses national security concerns or an imminent risk of death, violence, or physical harm.

The Court acknowledges that not all agency policies are subject to the *Accardi* doctrine. *E.g.*, *Zelaya Diaz*, 986 F.3d at 690 ("The internal memoranda Zelaya relies upon do not reach that level of formality or substantive importance in protecting individual rights."). Nevertheless, "it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). And, the Core of *Accordi* is that the government may not "fail[] to exercise its own discretion" when valid regulations require it to do so. 347 U.S. at 268.

Moreover, the respondents have not responded to Ms. Morales Lopez's *Accardi* argument *at all*. Neither "*Accardi*" nor "pregnant" nor "pregnancy" appears anywhere in the response. Dkt. 6. "Failure to respond to an argument . . . results in waiver." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Lacking any opposition from the respondent, the Court finds that Ms. Morales Lopez's detention violates ICE Directive 11032.4 and that she is therefore entitled to release under the *Accardi* doctrine. *Cf. Banegas v. Bondi*, No. 26-CV-63-WMC, 2026 WL 473162, at *2 (W.D. Wis. Feb. 19, 2026) ("Having identified no exceptional circumstance or other legal reason why her release is impermissible under ICE Directive 11032.4, respondents are in violation of *Accardi* for failure to comply with an agency policy that plainly affects individual rights."); *de Leon v. Ladwig*,

No. 6:25-CV-01884, 2026 WL 19095, at *8 (W.D. La. Jan. 2, 2026) ("If Petitioner de Leon's continued detention and denial of parole do not comport with the policy set forth in ICE Directive 11032.4, then the Court must require Respondents to abide by their own policy.").

### III. Conclusion

The petition for a writ of habeas corpus is **granted**. The respondents will have **48 hours** to file a notice certifying that Ms. Morales Lopez has been released from detention.

**IT IS SO ORDERED.**

Date:    5/21/2026

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Nora Unverzagt Galindo
Law Office of Nora Galindo
nora@noragalindolaw.com

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP (New Albany)
jlowe@k-glaw.com

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov

9